UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

―――――――――――――――――――――――――――――――
WRINKLED SURFACE ENTERPRISES
LLC,
                            Plaintiff,

              -v-

SERGEI GURIANOV, et al.,
                            Defendants.
―――――――――――――――――――――――――――――――

19-CV-8882 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiff Wrinkled Surface Enterprises LLC brought this copyright action against Ukrainian Defendants Sergei Gurianov, Ivanka Romanova, and Kompaniya SEO Solution on September 25, 2019.  (Dkt. No. 1.)  Since then, Plaintiff has attempted to serve the complaint on Defendants in Ukraine by mailing and emailing it to the addresses Defendants provided in their Digital Millenium Copyright Act ("DMCA") Counternotice, 17 U.S.C. § 512(g)(3)(D), responding to the DMCA Takedown Notice that Plaintiff filed with Google Search to prompt the removal of allegedly infringing content.  (Dkt. No. 1 ¶ 13; Dkt. No. 19 ¶¶ 8–9.)  Defendants have neither appeared in this case nor provided Plaintiff with any acknowledgement that they received the complaint.  On October 8, 2020, Plaintiff moved for the Court to approve the sufficiency of Plaintiff's attempts to serve Defendants by mail and email.  (Dkt. No. 17.)  For the reasons that follow, Plaintiff's motion is denied.

**I.      Discussion**

Federal Rule of Civil Procedure 4 sets forth how complaints must be served.  In relevant part, Rule 4(f) provides that, "[u]nless federal law provides otherwise," service of process on an individual in a foreign country must occur:

> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents [("Hague Service Convention"), Nov. 15, 1965, [1969] 20 U.S.T. 361, T.I.A.S. No. 6638];
> . . . or
> (3) by other means not prohibited by international agreement, as the court orders.

Because Ukraine and the United States are both parties to the Hague Service Convention, a court considering whether a plaintiff has successfully served a Ukraine-based defendant typically reviews whether the attempted service comports with the terms of that treaty or whether the circumstances warrant an alternative, but not prohibited, means of service.  *See* Hague Conference on Private International Law, *Status Table: Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters*, HCCH.NET, July 27, 2020, https://www.hcch.net/en/instruments/conventions/status-table/?cid=17.  Not so in this case, Plaintiff argues.

Here, Plaintiff contends that no recourse to the Hague Service Convention is necessary because the DMCA is a "federal law [that] provides otherwise" and displaces the standard Rule 4(f) procedures for serving foreign defedants.  Fed. R. Civ. P. 4(f).  Plaintiff highlights that parties submitting DMCA counternotices must include, in the counternotice, "a statement that . . . [they] will accept service of process from the person who provided the [DMCA takedown] notification."  § 512(g)(3)(D).  Plaintiff suggests that such a statement, and the statutory language requiring it, "would be rendered meaningless" if it did not permit "service that would not otherwise satisfy [Rule] 4."  (Dkt. No. 18 at 5.)  In particular, Plaintiff proposes that a party must consent to service by email when it files a DMCA counternotice because "accepting" service can have no other meaning.  (Dkt. No. 18 at 6.)

2

The Court disagrees.  Plaintiff's reading of the DMCA is not the only reading that gives meaning to § 512(g)(3)(D)'s requirement that parties filing a counternotice accept service.  Contrary to Plaintiff's suggestion that "accepting" service must mean consenting to electronic service, Article 5, paragraph 2, of the Hague Service Convention explicitly provides that "an addressee who *accepts* [service] voluntarily" submits to so-called "informal service" under the treaty.  Hague Service Convention art. 5, ¶ 2 (emphasis added); Hague Conference on Private International Law, *Ukraine - Central Authority & Practical Information*, HCCH.NET, July 21, 2014, https://www.hcch.net/en/states/authorities/details3/?aid=251 (referring to service under Article 5, paragraph 2, as "Informal Service").  Informal service under the Hague Service Convention is a consent-based alternative to service performed by a State's Central Authority in accordance with the State's "internal law for the service of documents in domestic actions upon persons who are within its territory."  Hague Service Convention art. 5, ¶ 1.  Informal service, unlike formal service, does not require that the documents served "be written, or translated into, the official language . . . of the State" in which the foreign defendant resides.  *Id*. at art. 5, ¶ 3.  Furthermore, informal service can be effected by any consented-to method of delivery, "unless such a method is incompatible with the law of the State addressed."  *Id*. art. 5, ¶¶ 1–2.  Section 512(g)(3)(D) can be understood as requiring parties filing DMCA counternotices to submit to informal service under the Hague Service Convention.

Interpreting "accept service" in § 512(g)(3)(D) to mean "accept [service]" under Article 5, paragraph 2, of the Hague Service Convention better accords with the text and structure of the Federal Rules of Civil Procedure than does Plaintiff's proposed interpretation.  Although Rule 5(b)(2)(E) permits electronic service by "means that the [recipient] consented to in writing," this provision does not apply to complaints.  Indeed, Rule 5 recognizes that "a pleading

3

that asserts a new claim for relief against . . . a party must be served on that party under Rule 4." Fed. R. Civ. P. 5(a)(2). Rule 4 does not set forth any mechanism for a party to "accept" or "consent to" electronic service of an complaint. Instead, it permits a party to "waive" service. Fed R. Civ. P. 4(d). Quite apart from accepting service, *i.e.*, acknowledging that a particular method of delivering documents will suffice, waiving service means forgoing the method of delivery to which a party is entitled, as well as forgoing the right to seek dismissal for insufficient service. *Compare* "accept," MERRIAM-WEBSTER ONLINE, www.merriam-webster.com/dictionary/accept (last visited Dec. 11, 2020) (defining "accept" as "to receive (something offered) willingly") *with* "waive," MERRIAM-WEBSTER ONLINE, www.merriam-webster.com/dictionary/waive (last visited Dec. 11, 2020) (defining "waive" as "to relinquish (something, such as a legal right) voluntarily"); *see also* Fed. R. Civ. P. 12(b)(5) (providing for the defense of "insufficient service of process"). If Congress had intended for parties filing DMCA counternotices to waive service under Rule 4, surely § 512(g)(3)(D) would use the verb "waive" from Rule 4 — rather than the verb "accept" from the Hague Service Convention.

Furthermore, international law and comity counsel in favor of interpreting the DMCA as working within, rather than supplanting, the Hague Service Convention. To the extent that § 512(g)(3)(D) is ambiguous, it "should be construed . . . not to conflict with international law," or the rules for service in the Hague Service Convention. *Oliva v. U.S. Dep't of Just.*, 433 F.3d 229, 235 (2d Cir. 2005) (citing *The Charming Betsy*, 6 U.S. 64, 118 (1804)). And international comity, or "the recognition which one nation allows within its territory to the [laws] of another nation," *In re Maxwell Commc'n Corp. PLC by Homan*, 93 F.3d 1036, 1046 (2d Cir. 1996) (citing *Hilton v. Guyot*, 159 U.S. 113, 163–64 (1895)), commends the same, insofar as the Hague Service Convention was designed "to assure that defendants sued in foreign jurisdictions would

4

receive actual and timely notice of suit . . . by a method prescribed by the internal law of the receiving state or by a method . . . compatible with that law," *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698–99 (1988); *see also Convergen Energy LLC v. Brooks*, No. 20-cv-3746, 2020 WL 4038353, at *4 (S.D.N.Y. July 17, 2020) (explaining that adherence to Rule 4(f)(1), and thus the Hague Service Convention, "accord[s] with principles of comity by encourag[ing] the court to insist . . . that a plaintiff attempt to follow foreign law in its efforts to secure service of process" (internal quotation marks and citation omitted)).

Finally, plaintiffs and courts handling DMCA claims regularly take recourse to the Hague Service Convention to determine whether a foreign defendant received service of process. *See generally Fraserside IP LLC v. Kovalchuk*, No. 12-cv-60931, 2013 WL 12090322 (S.D. Fla. Feb. 12, 2013); *Fraserside IP LLC v. Youngtek Solutions Ltd.*, 796 F. Supp. 2d 946, 952–55 (N.D. Iowa 2011); *Conan Props. Int'l LLC v. Sanchez*, No. 17-cv-162, 2018 WL 4522099, at *2–3 (E.D.N.Y. June 8, 2018) ("[P]laintiffs attempted to serve defendant [who had filed a DMCA counternotice] pursuant to the Hague Convention"). Courts in DMCA cases have looked beyond the Hague Service Convention only to the extent that Rule 4(f)(3) permits them to do so. For instance, in *Epic Games, Inc. v. Mendes*, a California court permitted service by email, to the address listed in the DMCA counternotice, under Rule 4(f)(3) because Russia "has stopped completing service of process from U.S. courts" and the plaintiff accordingly could not "serve [the defendant] through the Hague Convention." No. 17-cv-6223, 2018 WL 582411, at *2 (N.D. Cal. Jan. 29, 2018). This practice, along with the Court's analysis, leads the Court to conclude that § 512(g)(3)(D) does not allow plaintiffs to bypass Rule 4(f)(1) and (3).

Plaintiff does not argue that it complied with Rule 4(f)(1) when it attempted to serve Defendants by mail and email. Nor could it. In Ukraine, informal service under Article 5,

5

paragraph 2, of the Hague Service Convention is limited to "[t]he delivery of the documents . . . by the local Department of Justice."[1]  Hague Conference on Private International Law, *Ukraine - Central Authority & Practical Information*.  Ukraine forbids plaintiffs from "send[ing] judicial documents, by postal channels, directly to persons abroad."  Hague Service Convention art. 10(a); Hague Conference on Private International Law, *Ukraine - Central Authority & Practical Information* (logging Ukraine's opposition to the methods of service outlined in Article 10).  Plaintiff's attempted service does not constitute informal service on a Ukraine-based defendant.

Plaintiff also does not argue that the Court should permit alternative service under Rule 4(f)(3).  Alternative service under Rule 4(f)(3) may be appropriate when "the circumstances are such that the court's intervention is necessary."  *Baliga on Behalf of Link Motion Inc. v. Link Motion Inc.*, 385 F. Supp. 3d 212, 220 (S.D.N.Y. 2019) (internal citation omitted).  A plaintiff's "desire to move quickly," without more, does not establish necessity.  *Id.*  Even if it could, Plaintiff here has exhibited no interest in expedience.  Plaintiff attempted to serve Defendants, for the first time, in mid-to-late December 2019, nearly three months after filing the complaint.  (Dkt. No. 19 at 14, 28.)  Plaintiff then apparently sat on its hands for nine months, until September 23, 2020, after it was directed to advise the Court on the status of service.  (Dkt. No. 15.)  The Court does not perceive the delays attendant to following the Hague Service Convention to be any greater than the delays Plaintiff has incurred through its own conduct.  In short, Plaintiff presents no reason for the Court to permit service by mail or email and deprive Defendants of their "right to insist on service pursuant to the Hague Convention."  *Sheets v. Yamaha Motors Corp., U.S.A.*, 891 F.2d 533, 536 (5th Cir. 1990).

---

[1] Formal service, by contrast, requires a Ukranian court to "summon[] the [defendant] in order to deliver the documents . . . during [a] court hearing."  Hague Conference on Private International Law, *Ukraine - Central Authority & Practical Information*.

## II.  Conclusion

For the foregoing reasons, Plaintiff's motion is DENIED. The Clerk of Court is directed to close the motion at Docket Number 17. Plaintiff shall serve the complaint on Defendants in accordance with Rule 4(f)(1).

SO ORDERED.

Dated: January 15, 2021
      New York, New York

_____
                   J. PAUL OETKEN
                   United States District Judge